

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-10-00165-CR

DWAYNE ANTHONY JAMES                                          APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

----------

## OPINION

----------

### I. Introduction

In three issues, Appellant Dwayne Anthony James appeals from his conviction for aggravated assault with a deadly weapon.  We affirm.

### II.  Factual and Procedural Background

James and Christopher Spain worked for Rude Boy Entertainment. Omololu Akinlolu (Omar), a rapper, testified that Rude Boy Entertainment had not paid him the $2,000 it owed him for his songs, so he contacted James on September 17, 2008, and Spain on September 18, 2008.  Spain informed Omar

that Rude Boy Entertainment executive Andrew Schuster was nearby and would deliver partial payment. Omar was subsequently shot in a drive-by shooting, identified James and Spain as the shooters, and gave police permission to search his phone.

The State charged James and Spain with commission of the offense, and they elected to try their cases together. The jury found both James and Spain guilty of aggravated assault with a deadly weapon and sentenced each to fifteen years' confinement. This appeal followed.

### III. Exclusion of Evidence

In his first issue, James claims that the trial court's exclusion of evidence denied him the right to present a complete defense. In his second issue, James contends that the trial court abused its discretion by excluding evidence regarding the contents of the cell phone as hearsay.

### A. Trial Objections

While cross-examining Omar, James's counsel, Kathy Lowthorp, attempted to elicit testimony that others besides the defendants had a motive to harm Omar. First, regarding Omar's testimony that he occasionally stayed at Schuster's home in Grand Prairie, Lowthorp asked Omar whether he had heard that a drive-by shooting had occurred outside Schuster's home and whether

anyone knew that Omar occasionally stayed there.[1]  Outside the presence of the jury, the trial court cautioned Lowthorp that she had violated the motion in limine regarding prior bad acts and that it must not happen again.  The State then objected to this question as hearsay, and the trial court sustained this objection. Next, Lowthorp asked Omar to discuss the YouTube video that publicly broadcasted Omar discussing "beef" he had with rappers at a club.  The State objected on the ground of relevance, and the trial court sustained this objection. Lowthorp then requested permission to make a bill of exception, which the trial court allowed, and which included the following, in relevant part:

> Q. [Lowthorp:] Is there any motive out there for why anyone else would be mad at you?
>
> A.  No.
>
> Q.  No one – there is no reason why anyone else out there would be mad at you in the last few years?
>
> A.  Not enough to kill me – try to kill me.
>
>      THE COURT:  I can't understand what you're saying.
>
> A.  No.
>
> Q.  [Lowthorp:] But the money in this case was enough motive for someone to want to kill you for $2,000?
>
> A.  That's what they tried to do.

---

[1] The jury subsequently heard testimony from a police officer that a shooting, possibly committed by Asian rappers, occurred outside Schuster's home on August 4, 2008.

Q. Okay. That's not a lot of motive. Do you think that's a lot to kill someone over $2,000?

A. That's why I couldn't believe that they shot me over $2,000.

Q. On that level, is there anyone else that would have similar types of motive to want to, you know, retaliate against you for any reason whatsoever?

A. No, ma'am.

Q. No. And the reason why you had a fight in the club had nothing to do with any possible motive for any reason to fight you but to fight you, correct?

A. No, ma'am. We was in the DJ booth, and we just got in an argument, because our previous beef was already squashed because we was cool for a long time. We got into it again in the DJ booth.

Q. What was his beef?

A. It was just some – really behind a chick at the end of the day, behind a woman, behind a female at the end of the day.

Q. And I'm sorry, didn't mean to interrupt you. And behind a woman is not enough reason to want to retaliate against someone.

A. No, ma'am.

Q. So no one has ever been killed before because of a woman?

[State]: Objection to relevance.

THE COURT: Sustained.

Q. [Lowthorp:] This is a very competitive business, isn't it?

A. Yes, ma'am.

Q. And that there would not be a reason for motive to want to put harm to you?

4

A.  No ma'am, because if you trying to make it in the business, you ain't going to try to risk it all.

Q.  But these guys here tried to do that; is that right?

A.  Yes, ma'am.  Yeah, they did.

Q.  Okay.  So they were willing to risk everything?

A.  They did.

Q.  And so could someone else; isn't that possible?

A.  They did.

> [State]:  Objection, calls for speculation.

> THE COURT:  Sustained.

Q.  [Lowthorp:] So why are you Segal?

> [State]:  Objection to relevance.  I don't think there's ever been any testimony that he equated himself to Segal.  There was some mention of YouTube, but he's never equated himself to Segal.

> THE COURT:  I'm going to overrule the objection.  You may answer.

A.  I just said that one time on the DVD, because they was talking about – ugh, I got jumped in the club, got beat up and stuff.  I just said, "I'm Segal, I know how to protect myself."

The next morning, after considering Lowthorp's bill, the trial court approved

a list of questions for Lowthorp to ask:

> THE COURT: . . . Here's the only questions that are allowed:  "Are you aware of people that could have a problem with you, as far as you know, might have a beef with you?  Could they be the type of people that could carry guns?"
>
> . . . .

5

THE COURT: And "you are" – then your question was, "The type of people that would want to get into a fight?" That's allowed.

"Is there any motive out there for why anyone else would be mad at you?" That's allowed.

No one there – is no – okay. "Is there a reason why anyone else out there would be mad at you in the last few years?" And that's allowed if you alter it to be more close in time. "Last few years" is not allowed. In the last – during this period of time at the time of the offense.

The question, "But the money in this case was enough motive for someone to want to kill you for $2,000?" That's allowed. The question is allowed.

"That's not a lot of motive – do you think that's a lot of – that's a lot to kill someone over $2,000?" That's allowed.

On that level – this question is allowed: "On that level, is there anyone else that would have similar types of motive that would want to retaliate against you for any reason whatsoever?"

"This is a very competitive business, isn't it?" That question is allowed.

"And there – and that the competitive business would not be a reason for motive to want to put harm to you?" That's allowed.

This question is allowed: "But these guys here tried to do that; is that right?"

And then the question: "Okay. So they were willing to risk everything?"

And the question: "So why are you Segal – Segal?"[2]

---

[2]Of these permissible questions, defense counsel did not ask whether those with motive to harm Omar would be the type to carry guns or to get into a fight, whether $2,000 is a lot to kill someone over, whether the competitive nature of the business would be motive for the defendants or someone else to harm

Later, Lowthorp sought to establish that Omar had intentionally deleted text messages, allegedly related to the collection of payment, from his phone. To this end, Lowthorp offered, and the trial court admitted, Omar's official T-Mobile phone records into evidence. To show the disparity between these records and the information stored on Omar's phone, Lowthorp called Arlington Police Detective Huey Nguyen to testify about the information he extracted from Omar's phone.

Detective Nguyen explained that phone numbers can be stored in two different places on a phone—the SIM card and the phone itself. Lowthorp questioned Detective Nguyen regarding Omar's SIM card, but when she asked Detective Nguyen for the dates of the four text messages retrieved from the SIM card, the State objected on the grounds of hearsay and lack of proper authentication. The trial court sustained this objection on both grounds.

Outside the jury's presence, Lowthorp asked the same question about the text message dates, and the State objected on the ground of relevance. The trial court sustained the objection as to the messages predating the September 18 shooting but granted Lowthorp permission to ask if the SIM card contained messages that were sent or received on that date and, if not, why not. The State also objected on the basis of hearsay to Lowthorp's proposed question regarding

Omar, whether the defendants were willing to risk everything, or why Omar calls himself Segal.

7

whether any of the text messages were to or from a particular phone number. The trial court sustained this objection.

Before the jury, Detective Nguyen testified about the method he used to record data from Omar's cell phone itself, as distinct from the SIM card. He used a Project-a-Phone, which video-recorded the phone's screen as he scrolled through the phone's contents. When Lowthorp offered these video clips, the State objected to hearsay, and the trial court sustained the objection. Upon Lowthorp's request, the trial court admitted the video clips for the record only.

## B. Applicable Law

Only relevant evidence is admissible. Tex. R. Evid. 402. Relevant evidence is evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence. Tex. R. Evid. 401. However, even if evidence is relevant, it can be excluded as hearsay. *See* Tex. R. Evid. 802. Hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted. Tex. R. Evid. 801(d).

An appellate court reviews a trial court's decision to exclude evidence for an abuse of discretion and will not reverse a trial court's ruling unless that ruling falls outside the zone of reasonable disagreement. *Burden v. State*, 55 S.W.3d 608, 615 (Tex. Crim. App. 2001) (citing *Green v. State*, 934 S.W.2d 92, 101–02 (Tex. Crim. App. 1996)); *see also Montgomery v. State*, 810 S.W.2d 372, 379–80

8

(Tex. Crim. App. 1990).  To preserve error from a ruling that excludes evidence, the proponent must provide the specific purpose for which the evidence is offered and the reasons why the evidence is admissible.  *Reyna v. State*, 168 S.W.3d 173, 177 (Tex. Crim. App. 2005) ("[I]t is not enough to tell the judge that evidence is admissible.  The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.").

Further, the United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense."  *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986).  An erroneous evidentiary ruling denies a defendant this right when, in pertinent part, the ruling is clearly erroneous and excludes "otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense."  *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App.) (internal quotation marks omitted), *cert. denied*, 537 U.S. 949 (2002).

## C.  Analysis

### 1.  Exclusion of Evidence

In his second issue, James argues that a cell phone's SIM card and data saved to a cell phone's hard drive are not hearsay and should not have been excluded.

#### a.  SIM Card

In part of his second issue, James claims that the trial court abused its discretion by excluding testimony about the text message dates as hearsay.

9

However, as the same information was also excluded on relevance grounds, which James does not address, we do not reach this hearsay argument. *See* Tex. R. App. P. 38.1; *Marsh v. State*, 343 S.W.3d 158, 161–62 (Tex. App.—Texarkana 2011, pet. ref'd) (stating that an appellant must attack all independent grounds supporting a trial court's ruling). Likewise, we do not reach James's other hearsay argument about text messages to or from a particular phone number because he also fails to address the trial court's relevance ruling on this question. *See* Tex. R. App. P. 38.1; *Marsh*, 343 S.W.3d at 161–62. We overrule this portion of James's second issue.

### b. Project-a-Phone Video Clips

In the remainder of his second issue, James claims that the trial court abused its discretion by excluding video clips created by the Project-a-Phone.[3]

After the trial court sustained the hearsay objection to the videos, Lowthorp did not specify the purpose for which she was offering the videos or why the videos were admissible. She merely asked the trial court to admit the videos for the record and asked Detective Nguyen questions regarding his care, custody, and control of the videos. Because Lowthorp did not apprise the trial court of the purpose for which she was offering the videos, it is impossible for us to determine whether she was offering them for the truth of their content and, thus, whether

---

[3]James claims that the trial court excluded the videos based on the State's authentication objection, but this objection related to the SIM card testimony and not to the Project-a-Phone data.

the videos were admissible. *See Reyna*, 168 S.W.3d at 179 (deciding that the trial court did not err since the appellant "did not clearly articulate" at trial why the evidence should be admitted). We overrule the remainder of James's second issue.

### 2. Right to Present a Complete Defense

In his first issue, James argues that he was denied the right to present a complete defense by the trial court's "exclusion of evidence that would have suggested that a third party may have committed the shooting[.]"

James contends that he was entitled to elicit testimony that (1) Omar spoke on YouTube of others wanting to hurt him,[4] (2) a drive-by shooting occurred at Omar's part-time Grand Prairie residence less than two months before the instant shooting, and (3) Omar intentionally deleted cell phone calls and messages from his phone. According to James, had the trial court permitted the jurors to hear evidence that other persons wanted, and might have already tried, to harm Omar, they might have considered the defense's theory that someone else committed the offense.

As James concedes, however, the trial court did not preclude him from eliciting testimony consistent with this theory. Indeed, after considering Lowthorp's bill of exception, as set out above, the trial court approved a series of questions that could have elicited the same information and that were phrased

---

[4]The evidence at issue is merely Omar's testimony, not the actual YouTube video, which was never offered into evidence.

11

much like Lowthorp had asked them in her bill. The only apparent limitations on the questions were (1) counsel could not ask Omar what he said in the YouTube video, (2) counsel could not ask Omar if he had heard that a shooting occurred outside Schuster's home at which Omar occasionally stayed, (3) counsel could not ask questions regarding motive to hurt Omar except as to motive existing at the time of the offense, (4) counsel could not ask Omar about a specific fight in a club, and (5) counsel could not ask Omar to speculate whether someone else would be willing to "risk everything."

While these rulings limited the questions that Lowthorp could ask, only Omar's responses and Lowthorp's trial tactics limited the defense that James was able to present. *See Wiley*, 74 S.W.3d at 405. The first limitation did not prevent Lowthorp from asking the approved question that, when she asked it in the bill of exception, elicited testimony related to Omar's YouTube statements about who might have "beef" with him. However, defense counsel did not ask this question before the jury.

The second limitation did not prevent Lowthorp from introducing testimony about the prior shooting. Indeed, when sustaining the hearsay objection to Lowthorp's question to Omar regarding the prior shooting, the trial court mentioned that the evidence might be admissible another way. Further, Lowthorp was still able to offer a police officer's testimony that a drive-by shooting occurred outside Schuster's home on August 4, 2008, and that it was possibly committed by Asian rappers. This, combined with Omar's testimony that

12

he occasionally stayed at Schuster's home, allowed the jury to infer that others might have tried to harm Omar.

The third limitation did not prevent testimony about motive but merely confined the testimony to relevant time periods during which the existence of motive would have had some bearing on whether someone else committed the offense. *See* Tex. R. Evid. 401; *Russo v. State*, 228 S.W.3d 779, 798 (Tex. App.—Austin 2007, pet. ref'd) ("Questions, as here, of when testimony becomes too remote and, therefore, irrelevant are left to the sole discretion of the trial court."). Moreover, when Omar's answers regarding others' motive to harm him did not divulge what Lowthorp hoped they would, she could have, as the trial court mentioned, examined other witnesses.

While the fourth limitation prohibited a direct question about Omar's fight in the club, it did not altogether forbid testimony about this fight. Lowthorp was still allowed to ask if people with a motive to harm Omar would be the type to get into a fight. Additionally, as previously discussed, defense counsel chose not to ask an approved question that, in the bill of exception, elicited Omar's testimony regarding the fight in the club.

Finally, even though the fifth limitation prevented Omar from speculating about whether someone else might be willing to "risk everything," Lowthorp was still permitted to ask whether the defendants were willing to do so. Thus, even though Omar could not testify about matters outside his personal knowledge, the

13

jury was still able to infer that others would also be willing to "risk everything." *See* Tex. R. Evid. 602.

Further, with regard to James's argument that he was entitled to elicit testimony that Omar intentionally deleted cell phone calls and messages from his phone, the trial court's rulings on the State's objections to the SIM card data during Detective Nguyen's testimony permitted Lowthorp to ask whether any incoming or outgoing text messages on September 18, 2008, appeared on the SIM card and, if not, what the possible reasons for this were. During Detective Nguyen's testimony, Lowthorp was permitted to show the jury the text messages listed in T-Mobile's records for the day of the shooting and to present testimony that the SIM card showed no text messages on the same day, to allow the jury to infer that Omar had intentionally deleted these messages.

In sum, the excluded evidence did not form "such a vital portion of the case" that exclusion effectively precluded James from presenting a defense because, despite the limitations and exclusions, Lowthorp was still able to introduce the same or similar evidence to suggest that a third party committed the offense and that Omar intentionally deleted cell phone calls and text messages from his phone. *See Wiley*, 74 S.W.3d at 405. Accordingly, we conclude that James was afforded his constitutional right to present a complete defense, and we overrule his first issue. *See Crane*, 476 U.S. at 690, 106 S. Ct. at 2146.

14

## IV. Ineffective Assistance of Counsel

In his third issue, James claims that his conviction was fundamentally unfair due to the ineffective assistance of counsel.

### A. Standard of Review

To establish ineffective assistance of counsel, the appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001). A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at 740; *Thompson*, 9 S.W.3d at 813–14. "In the

15

majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial, i.e., a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

## B. James's Trial

Pretrial, the defense attorneys and the trial court agreed that Lowthorp would go first during each phase of trial but would pass Spain's witnesses to

16

Spain's attorney and reserve the right to examine them if she had further questions.

During voir dire, Lowthorp thanked the trial court for letting James and Spain try their cases together "because we believe that we are saving dollars, tax dollars[,] on this by trying it, since the facts are all the same for both parties, and we believe that we are not in conflict with each other." When a member of the venirepanel asked her for clarification about whether these were two separate cases "but for cost purposes and efficiencies" were being addressed at the same time, she responded that both defendants were charged with the same offense arising out of the same incident.

Of the State's eight witnesses, both defense attorneys cross-examined three, and Spain's attorney examined the remaining five by himself.

## C. Analysis

First, James asserts that he was prejudiced by Lowthorp's decision to join his trial with that of his co-defendant and to pass five out of nine State witnesses to Spain's attorney.[5] However, in this case, like the majority of cases, the record is silent and "cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740. Without more, we must presume that Lowthorp's conduct fell within a wide range of reasonable representation. *See id.* Indeed, the decision to pass certain witnesses could have been a strategic

---

[5]We count eight State witnesses, three of whom both defense attorneys cross-examined and five of whom Spain's attorney cross-examined by himself.

17

decision to allow each attorney to cross-examine those witnesses with whom he or she felt more comfortable. *See Coble v. State*, 501 S.W.2d 344, 346 (Tex. Crim. App. 1973) (overruling the claim that counsel was ineffective for not cross-examining three of the nine State witnesses because "[o]ften, the decision to not cross-examine a witness is the result of wisdom acquired by experience in the combat of trial").

Additionally, notwithstanding Lowthorp's statement during voir dire that they were saving tax dollars by trying the cases together, nothing in the record "adequately reflect[s] the motives behind trial counsel's actions" because nothing shows that they did not try the cases together for James's benefit.[6] *Salinas*, 163 S.W.3d at 740. Indeed, when the court of criminal appeals has held that possessing an economic motive is grounds for an ineffective assistance of counsel determination, it has only been when the record affirmatively demonstrates that counsel's decision could not have been strategic. *See Ex parte Briggs*, 187 S.W.3d 458, 467–68 (Tex. Crim. App. 2005) (holding that counsel's action—failing to investigate the victim's medical history because counsel had not been paid for experts—rendered counsel ineffective when "the clear and obvious defense strategy, which [he] recognized, was to focus on [the victim's] medical history"); *see also Aldrich v. State*, 296 S.W.3d 225, 245 (Tex.

---

[6]James filed a motion for new trial, but he did not raise ineffective assistance of counsel in it; therefore, we consider only the record before us when reviewing James's ineffective assistance of counsel complaint.

18

App.—Fort Worth 2009, pet. ref'd) (op. on reh'g) (holding that counsel's action—failing to timely designate experts in part because his client was indigent—rendered counsel ineffective when the record "affirmatively reflect[ed]" that he "repeatedly recognized the need for defense experts").

In contrast to *Briggs* and *Aldrich*, the record in this case does not affirmatively reflect that Lowthorp's decision contravened what she recognized was the appropriate course of action. *See Briggs*, 187 S.W.3d at 467–68; *see also Aldrich*, 296 S.W.3d at 245. To the contrary, the record reveals that the two cases involved the same facts, the same incident, and two defendants who were not in conflict with each other. Thus, the record does not foreclose the conclusion that the decision was a tactical one allowing the attorneys to work together to present a better defense than either could have presented alone.

Also, James contends that Lowthorp did not remind the jury of the burden of proof required in a criminal case. However, as long as the jury is given the correct legal framework for deciding the case, "[t]he points of the charge that defense counsel [chooses] to emphasize in argument [is] a matter properly left to the realm of trial strategy." *Tong v. State*, 25 S.W.3d 707, 713 (Tex. Crim. App. 2000) (holding that defense counsel was not ineffective for failing to inform the jury during closing argument that the burden of proof was "beyond a reasonable doubt"), *cert. denied*, 532 U.S. 1053 (2001). Here, even though Lowthorp did not reiterate that the standard is "beyond a reasonable doubt," the trial court's charge to the jury contained this standard. Because the trial court's charge gave the jury

19

the correct legal framework for deciding James's case, Lowthorp was not ineffective for choosing not to emphasize the burden of proof. *See id.*

Next, James claims that Lowthorp did not admonish the jury that the two defendants were to be considered separately, leaving this to Spain's attorney. However, as set out above, Lowthorp addressed this during voir dire. She further clarified the matter when a venireman specifically asked if the two cases were to be considered separately.

Finally, James claims that Lowthorp negatively affected the jury's opinion of her when the trial court had to correct her in front of the jury for becoming unnerved and making nonlegal objections. The only instance to which James directs us, however, occurred outside the jury's presence and, thus, could not have prejudiced the jury. We overrule James's third issue.

## V. Conclusion

Having overruled all of James's issues, we affirm the trial court's judgment.

BOB MCCOY
JUSTICE

PANEL: DAUPHINOT and MCCOY, JJ.; and CHARLES BLEIL (Senior Justice, Retired, Sitting by Assignment).

DAUPHINOT, J. filed a dissenting opinion.

PUBLISH

DELIVERED: December 8, 2011

20



### NO. 02-10-00165-CR

DWAYNE ANTHONY JAMES                                                    APPELLANT

V.

THE STATE OF TEXAS                                                              STATE

------------

FROM CRIMINAL DISTRICT COURT NO. 1 OF TARRANT COUNTY

------------

## DISSENTING OPINION

----------

The majority does not address Appellant's challenge to the trial court's exclusion of the cell phone's SIM card and data saved to the cell phone's hard drive because the majority concludes that Appellant did not address the State's relevance objection. Respectfully, I cannot agree. The summary of the argument in Appellant's brief provides,

> This evidence was crucial to [Appellant's] defense as they would likely have established that the victim tampered with evidence by deleting relevant messages. The trial court should have erred on the side of caution and allowed defense counsel leeway to explore

more extensively the varying testimony, statements and actions of the victim. Omar's statements regarding who and [how] many people were involved in the shooting changed from the day he was shot through the day he testified in court. The information he gave police regarding his cell phone activity morphed on the day of trial to include mysterious technical problems never mentioned to police.

The argument portion of Appellant's brief contains the following statement: "Cell phone communication was key in this case." Appellant then reiterates the actions of Omar and the attempts of the police to determine the contents of the cell phone and the SIM card. He also reminds this court that when Omar was questioned by defense counsel, he stated that he had had problems with his phone deleting data and that he had told the detectives about the problem. At the same time, Appellant points out, Omar had told defense counsel that on the day of the shooting, he had been making and receiving calls and text messages all day and that the phone's call log worked properly that day.

Appellant's brief then states:

As this Court opined in *Burleson v. State*,. . . . "testifying to missing information and not to specific content cannot be considered hearsay." Allowing this information would have permitted defense counsel to cross reference what information was stored on the phone when the police received it, as compared to what calls and text messages [were] actually sent as per the phone records, thus showing the jury that perhaps some information was removed from the phone prior to police custody for a purpose.

It is true that Appellant did not cite to boilerplate language explaining what relevant evidence is, but Appellant clearly explained the relevance, indeed the importance, of the excluded evidence. I would therefore hold that he does address relevance.

2

Additionally, the statements of the trial court as well as the discussions of the lawyers with each other and with the trial court show that the basis of the trial court's ruling was not relevance.  It is likely that the scholarly and experienced trial judge concentrated on the hearsay objection to the exclusion of the relevance objection because she is well aware that a relevance objection is a general objection that is the same as no objection at all.[1]

I would address the merits of Appellant's argument and determine whether the excluded evidence was inadmissible hearsay.  Because the majority does not, I respectfully dissent.

LEE ANN DAUPHINOT
JUSTICE

PUBLISH

DELIVERED:  December 8, 2011

---

[1]*See Barnard v. State,* 730 S.W.2d 703, 716 (Tex. Crim. App. 1987), *cert. denied*, 485 U.S. 929 (1988); *Simpson v. State,* 507 S.W.2d 530, 534 (Tex. Crim. App. 1974) ("[I]t is simply and purely irrelevant to this proceeding.  Such an objection is a general objection which is like no objection at all.") (internal quotation marks omitted).