

## COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

### NO. 02-12-00230-CR

STEVE WILLIAMS                                                     APPELLANT

V.

THE STATE OF TEXAS                                                      STATE

----------

### FROM 396TH DISTRICT COURT OF TARRANT COUNTY

----------

## MEMORANDUM OPINION[1]

----------

### I. INTRODUCTION

A jury found Appellant Steve Williams guilty of burglary of a habitation. The trial court assessed Williams's punishment at 25 years' confinement in the Institutional Division of TDCJ. In two points on appeal, Williams contends that the trial court's exclusion of evidence violated his constitutional rights under both

---

[1]See Tex. R. App. P. 47.4.

the Due Process Clause of the Fourteenth Amendment and the Confrontation Clause of the Sixth Amendment. We will affirm.

## II. FACTUAL AND PROCEDURAL BACKGROUND

Williams and Ashanti Mims dated on and off for approximately nine or ten years. They also lived together in Mims's house for about five years, but not since 2009. According to Mims, she and Williams were separated on July 4, 2011, the day of the incident at issue here. Williams did not have a key, garage-door opener, or any sort of code to enter Mims's house. He had been in Mims's house, with her consent, a few days prior to the incident, but Mims did not invite him over on July 4.

Williams and Mims had been arguing on the phone all day on July 4. He wanted her to come over to his house, but she refused. Williams became upset and called Mims, telling her that he was going to kill her, along with her son, her daughter, and everyone she loved. He said that he was going to come to her house and that she better have the police there before he arrived. Mims called 911, and two or three minutes later, Williams arrived. He entered the house through the front screen door and went directly to Mims's bedroom, where she was hiding. He kicked the bedroom door off its hinges and attacked Mims, punching her in the face multiple times and pulling out her hair. Mims's niece and uncle witnessed the assault.

At trial, Mims testified that she and Williams were never married and that Williams was not living with her at the time of the offense. Williams's primary

2

defense was that he and Mims held themselves out as married and lived together in Mims's house, and that, consequently, he had effective consent to enter Mims's house on the day of the incident and could not be guilty of burglary. *See* Tex. Penal Code Ann. § 30.02(a) (West 2011) (setting forth elements of burglary, including entrance into a habitation without the owner's effective consent). On cross-examination, Mims stated that she receives financial assistance from Grand Prairie Housing in order to pay her rent. She admitted that her rent payments would increase if the housing authorities knew that Williams either lived with or was married to her. When defense counsel attempted to question Mims about her new boyfriend, the trial court sustained the State's relevancy objection.

Defense counsel then made an offer of proof, during which Mims testified that, after Williams's arrest, she began dating Williams's nephew Tyler. The housing authorities investigated her because Tyler had applied for a driver's license using Mims's address as his own. During that investigation, Mims told a neighbor not to tell the housing authorities that Tyler lived with her because she was afraid her rent payments would increase. Mims explained at trial that she did not know about, or consent to, Tyler listing her address as his own on his driver's license and that, in order to clear up the matter, Tyler's grandmother provided Mims with documents verifying that he did not live with her. At the conclusion of the offer of proof, the trial court again sustained the State's objection to this evidence.

3

The jury found Williams guilty of burglary of a habitation. At the punishment phase of trial, Williams pleaded not true to one enhancement paragraph. The trial court found the enhancement paragraph true, assessed Williams's punishment at 25 years' confinement, and sentenced him accordingly.

### III. EXCLUSION OF EVIDENCE

Williams argues in two points that the trial court abused its discretion by excluding Mims's testimony, as set forth in his offer of proof. He contends that the exclusion of this evidence (1) violated his constitutional rights under the Due Process Clause of the Fourteenth Amendment by prohibiting him from presenting a complete defense and (2) violated his constitutional rights under the Confrontation Clause of the Sixth Amendment by restricting him from fair cross-examination. Williams argues that had the jury heard evidence that Mims had a financial reason to lie about another man living with her after Williams's arrest, the jury could have believed that Williams lived with Mims at the time of the assault and thus had effective consent to enter the home, negating a specific element of burglary. *See id.*

### A. Standard of Review

We review the trial court's exclusion of evidence under an abuse of discretion standard. *Montgomery v. State*, 810 S.W.2d 372, 379 (Tex. Crim. App. 1990). A trial court does not abuse its discretion unless its ruling is arbitrary and unreasonable and therefore outside the zone of reasonable disagreement. *Manning v. State*, 114 S.W.3d 922, 926 (Tex. Crim. App. 2003). The mere fact

4

that a trial court may decide a matter within its discretionary authority in a different manner than an appellate court would in a similar circumstance does not demonstrate that an abuse of discretion has occurred. *Id.*

## B. No Due Process Violation

The United States Constitution guarantees criminal defendants "a meaningful opportunity to present a complete defense." *Holmes v. S. Carolina*, 547 U.S. 319, 319, 126 S. Ct. 1727, 1728 (2006); *Crane v. Kentucky*, 476 U.S. 683, 690, 106 S. Ct. 2142, 2146 (1986). An erroneous evidentiary ruling denies a defendant this right when, in pertinent part, the ruling is clearly erroneous and excludes "otherwise relevant, reliable evidence which forms such a vital portion of the case that exclusion effectively precludes the defendant from presenting a defense." *Wiley v. State*, 74 S.W.3d 399, 405 (Tex. Crim. App.) (internal quotation marks omitted), *cert. denied*, 537 U.S. 949 (2002); *see Ray v. State*, 178 S.W.3d 833, 835 (Tex. Crim. App. 2005). "'[E]videntiary rulings rarely rise to the level of denying the fundamental constitutional rights to present a meaningful defense.'" *Ray*, 178 S.W.3d at 835 (quoting *Potier v. State*, 68 S.W.3d 657, 663 (Tex. Crim. App. 2002)).

Here, Williams argued at trial that Mims's excluded testimony was admissible to show "that she has a practice of letting men live with her and lying about it so she doesn't lose her benefits." But the trial court's ruling excluding this evidence did not effectively prevent Williams from presenting his defense— he effectively cross-examined Mims about her motivation to lie about Williams

5

living with her and also presented evidence that she had referred to him as her husband. Mims testified during direct examination that she and Williams were never married, but on cross-examination, she admitted that she had referred to him as her husband in her affidavit of nonprosecution. The affidavit of nonprosecution was admitted in evidence as Defense Exhibit 1. Mims also testified that she had signed the affidavit of nonprosecution partly because she was financially dependent on Williams. He had been helping her pay her bills at the time. Over objection, Mims testified to how much she pays in rent each month and how much income she earns each month. Mims testified that her rent payment was low because she received financial assistance from Grand Prairie Housing. She acknowledged that her rent would increase if the housing authorities knew that Williams was living with her or married to her.

Ultimately, Mims's excluded testimony did not form "such a vital portion of the case" that its exclusion precluded Williams from presenting a defense; he was still able to introduce evidence to support his defensive theory that Mims was financially motivated to deny that Williams was married to or lived with her. *See Wiley*, 74 S.W.3d at 405; *James v. State*, 356 S.W.3d 728, 736 (Tex. App.— Fort Worth 2011, pet. ref'd). The jury heard evidence that Mims needed financial assistance to pay her bills, that her rent would increase if the housing authorities discovered that she was married to or lived with anyone, that she had previously referred to Williams as her husband, and that he had lived with her for five years prior to the incident, although they were separated at the time of the incident.

6

The exclusion of Mims's testimony did not effectively prevent Williams from presenting his defensive theory. *See Wiley*, 74 S.W.3d at 405. Because Williams's due process right to present a complete defense was not violated, we overrule his first point.

### C. No Confrontation Violation

The Confrontation Clause of the Sixth Amendment guarantees that "[i]n all criminal prosecutions the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. The Sixth Amendment right to confront witnesses includes the right to cross-examine them to attack their general credibility or to show their personal bias, self-interest, or motives in testifying. *Hammer v. State*, 296 S.W.3d 555, 561 (Tex. Crim. App. 2009) (citing *Davis v. Alaska*, 415 U.S. 308, 316, 94 S. Ct. 1105, 1110 (1974)).

A defendant is entitled to pursue all avenues of cross-examination reasonably calculated to expose a motive, bias, or interest for the witness to testify, and therefore, the scope of appropriate cross-examination is necessarily broad. *Carroll v. State*, 916 S.W.2d 494, 497 (Tex. Crim. App. 1996). But this does not mean that a defendant can explore every possible line of inquiry. *Hammer*, 296 S.W.3d at 561; *Walker v. State*, 300 S.W.3d 836, 844 (Tex. App.—Fort Worth 2009, pet ref'd). Rather, "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20, 106 S. Ct. 292, 295 (1985); *see Walker*,

7

300 S.W.3d at 844–45. Thus, trial courts have the discretion to limit cross-examination as inappropriate for a number of reasons, including the prevention of harassment, prejudice, confusion of the issues, and marginally relevant interrogation. *Carpenter v. State*, 979 S.W.2d 633, 634 (Tex. Crim. App. 1998) (citing *Delaware v. Van Arsdall*, 475 U.S. 673, 679, 106 S. Ct. 1431, 1435 (1986)).

Each Confrontation Clause issue is viewed on a case-by-case basis. *Lopez v. State*, 18 S.W.3d 220, 222 (Tex. Crim. App. 2000). "The proponent of evidence to show bias must show that the evidence is relevant. The proponent does this by demonstrating that a nexus, or logical connection, exists between the witness's testimony and the witness's potential motive to testify in favor of the other party." *Woods v. State*, 152 S.W.3d 105, 111 (Tex. Crim. App. 2004), *cert. denied*, 544 U.S. 1050 (2005) (citing *Carpenter*, 979 S.W.2d at 634). The trial court does not abuse its discretion by excluding evidence of alleged bias or motive if the defendant's offer of proof does not establish the required nexus. *See id.* at 111–12.

Here, as the proponent of the evidence concerning Mims's alleged bias, Williams had the burden to demonstrate a nexus or logical connection between the testimony concerning Mims's new boyfriend and her potential motive for testifying against Williams. *See Smith v. State*, 352 S.W.3d 55, 67 (Tex. App.—Fort Worth 2011, no pet.). Mims's testimony about the housing authorities' investigation into her living situation with another man after Williams's arrest did

8

not concern Williams or whether he had consent to enter her home on July 4, 2011. "A trial court has the discretion to limit testimony that may confuse the issues or be only marginally relevant." *Walker*, 300 S.W.3d at 846 (citing *Van Arsdall*, 475 U.S. at 679, 106 S. Ct. at 1435, and *Felan v. State*, 44 S.W.3d 249, 254 (Tex. App.—Fort Worth 2001, pet. ref'd)). Whether or not Mims told someone not to tell the housing authorities that her new boyfriend did not live with her is, at most, only marginally relevant, and the jury had already heard that Mims had a financial interest in claiming that Williams did not live with her.

Because the trial court's exclusion of Mims's testimony about an incident with her new boyfriend after Williams was arrested for the charged offense is within the zone of reasonable disagreement, we hold that the trial court did not abuse its discretion by excluding it.[2] We overrule Williams's second point.

---

[2]Williams also complains in his second point of the trial court's admission of Mims's 911 call over his objection that the admission of the 911 operator's statements made during the call violated his right to confrontation. We have reviewed the 911 call. The primary purpose of both the operator's questions and Mims's answers was not to establish or prove past events potentially relevant to later criminal prosecution. *See Michigan v. Bryant*, 131 S. Ct. 1143, 1156, (2011); *Davis v. Washington*, 547 U.S. 813, 822–23, 126 S. Ct. 2266, 2273–74 (2006). Mims called 911 about an ongoing emergency—Williams had just threatened to kill her and her family and said he was coming over to her house— and the statements made during the 911 call were made for the purpose of obtaining information to enable police assistance. *See Davis*, 547 U.S. at 822–23; 126 S. Ct. at 2272–74 (explaining that statements are nontestimonial when made in course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency); *see also Bryant*, 131 S. Ct. at 1157 (noting that the most important circumstances informing the "primary purpose" of an interrogation is the existence of an ongoing emergency); *United States v. Polidore*, 690 F.3d 705, 718 (5th Cir. 2012), *cert. denied*, 133 S. Ct. 1583 (2013)

9

## IV. CONCLUSION

Having overruled Williams's two points, we affirm the trial court's judgment.



SUE WALKER
JUSTICE

PANEL:  GARDNER, WALKER, and MCCOY, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED:  August 8, 2013

---

(holding that, although 911 caller appeared to have understood that his comments would start an investigation that could lead to a criminal prosecution, the primary purpose of his statements was to request police assistance in stopping an ongoing crime and to provide police with information to do so). Therefore, the statements were nontestimonial and their admission did not violate Williams's rights under the Confrontation Clause.  *See Crawford v. Washington*, 541 U.S. 36, 51–52, 124 S. Ct. 1354, 1364 (2004).  To the extent that Williams's confrontation complaint involves the admission of the 911 call, we reject his argument.