In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-13-00057-CR
_____

JAMES DAVID CLARKE JR., Appellant

V.

THE STATE OF TEXAS, Appellee

On Appeal from the 221st District Court
Montgomery County, Texas
Trial Cause No. 12-12-12927-CR

**MEMORANDUM OPINION**

A jury found James David Clarke Jr. ("Clarke" or "Appellant") guilty of the murder of Amber Elkins, Clarke's twenty-year-old girlfriend. The jury also found the enhancement allegation "true," and assessed a punishment of life in prison and a $10,000.00 fine. In a single issue on appeal, Clarke argues he was denied effective assistance of counsel because he was not allowed to present evidence and

1

cross examine a witness to prove his theory that there was an alternative perpetrator. We overrule Clarke's issue and affirm the judgment.[1]

BACKGROUND

The record indicates that, prior to her death, Amber Elkins was in a relationship with Clarke. Elkins had a nine-month-old daughter from an earlier relationship with Frankie Ferrata. Thomas Smith, one of the witnesses at trial, testified that he tried to help Elkins get a job. Smith testified that Elkins had a daughter, and there were custody issues between Elkins and the child's father. A few days before she was murdered, Smith put Elkins up in a hotel to help her get away from Clarke. When Smith went to check on Elkins, she was with Clarke in the hotel. Clarke had a gun. Smith described Elkins as being "real scared, set-offish[,]" and she indicated to Smith "she was really concerned about the weapon several times." On July 24, 2011, a couple of days later, Elkins called Smith and asked him to bring her some money that she needed for court. Smith took the money to Elkins and met her at the "Ross Dress for Less" store where she was

---

[1]Clarke does not claim that his trial counsel's performance fell below the objective standard of reasonableness or that there is a "reasonable probability" the result of the proceeding would have been different but for counsel's allegedly deficient performance. Accordingly, Clarke has not asserted an ineffective assistance claim. *See Strickland v. Washington*, 466 U.S. 668, 693-94 (1984). However, Clarke also alleges he was not allowed a meaningful opportunity to develop his "alternative perpetrator" defense. Therefore, we focus on that claim.

buying clothing items. Smith saw Clarke, who was sitting in Elkins' SUV in the parking lot while Elkins was shopping in the store. Smith testified that he could see that Clarke had a gun between his lap and the console. Smith went inside the store and gave Elkins the money. Later that night, Elkins called Smith again and asked for gas money. Smith met Elkins at a gas station and gave her more money. Smith testified that Clarke was with Elkins at the station that night, and that was the last time Smith saw Elkins.

Shellie Krenzke, one of Elkins' friends, also testified at trial. Krenzke stated that she saw Elkins on July 24th, and Elkins told her that Clarke and Elkins had been "fighting really bad[,]" and that Elkins was going to leave Clarke and end their relationship. Elkins had a scheduled court appearance on July 25, 2011, on a drug possession charge, and she was also supposed to be in Madisonville on that date regarding a custody matter.

Elkins' mother, Shani Kilpatrick, testified that Elkins and Clarke had been dating about two months, and Kilpatrick did not approve of the relationship. In the early morning hours of July 25th, Kilpatrick received a phone call from Elkins' cell phone. Kilpatrick was asleep and did not notice the call until later that morning. She then called Elkins' cell phone and Clarke answered it. When Kilpatrick asked him where Elkins was, he hung up without answering the

3

question. Kilpatrick continued thereafter to call Elkins' cell phone but she never heard back from her daughter.

After Elkins was reported missing, the police began an investigation. The police received a report of an abandoned SUV located on Hull Road in Montgomery County that was registered to Elkins. The police examined the SUV and it had "a lot of blood" in it, as well as items from Ross Dress for Less. Elkins' body was not located until several days thereafter.

Rebecca Hull, who had children by Clarke, testified Clarke came by her home in the early morning hours of July 25, 2011. He told her that he had killed someone. Clarke told Hull that "sometimes the witch was Crystal and sometimes she was Amber." Clarke further said he shot the person in the head when they were in a vehicle travelling on Beltway 8. And he said he put the body in the bed of his pickup truck, and then disposed of the body by a bridge. Clarke told Hull that he "had been out all night washing his car at the car wash" and that he disposed of the victim's clothes by putting them in dumpsters at motels. Hull testified that Clarke referred to the back of his pickup truck as being the place "where [he] had the body." Clarke also showed Hull a bloody cell phone. Seeking to protect her children, Hull left in a vehicle with Clarke. Among other stops, they went to the post office because Clarke told Hull he wanted to get him, Hull, and Hull's

4

children passport applications. They later returned to Hull's home, and ultimately Clarke left.

Over the next few days, Clarke stayed in a motel with another friend, Crystal Stokes. Elkins was still missing. Stokes testified that she commented to Clarke that it would be horrible for a parent to not know the whereabouts of his or her child. Clarke replied, "How do you think I feel? I had her brain matter on me -- sprayed on me." Stokes testified that Clarke stated that "they are bigger than the cops, they are bigger than him, they would kill his kids." Clarke did not identify the people he was referencing when he said "they."

A search team assisted in locating Elkins' remains. On July 31, 2011, the search team found her body in a dry creek bed near the side of a bridge just a few miles from Hull's home. The coroner confirmed that Elkins suffered two close-range gunshot wounds to her head.

Cell phone records were admitted into evidence. The records reveal activity on Clarke's phone from July 20-24, 2011. Clarke told the officers that he had not had his phone for the last week to two weeks, but the records indicated that Clarke's and Elkins' phones were used in the area where Elkins was last seen and in the vicinity of where her body was found.

DNA evidence was obtained from inside Elkins' SUV and from Clarke's pickup truck. There were some unknown DNA samples from some areas inside the SUV that were not a match for either Clarke or Elkins. The investigators did not obtain a DNA swab from Ferrata, the father of Elkins' child. The police also recovered other physical evidence from Elkins' SUV, including drug paraphernalia, clothing items, and methamphetamines.

## CLARKE'S ARGUMENT ON APPEAL

Clarke contends he was not allowed to fully develop his theory that someone else murdered Elkins. In closing argument, defense counsel suggested that drug dealers, Ferrata, or the "they" (mentioned by Clarke in his description to Crystal Stokes) may have murdered Elkins. Clarke maintains that the trial court did not allow him to sufficiently present evidence and cross-examine witnesses to further support his alternative perpetrator defense at trial. He specifically references the exclusion of the additional evidence he sought to introduce about Ferrata.

## EVIDENCE ADMITTED REGARDING FERRATA

On cross-examination, defense counsel questioned Kilpatrick about Frankie Ferrata. She testified that Elkins had a nine-month-old daughter by Ferrata, that at one point Elkins allowed Ferrata to keep the child, and that he refused to return the child to Elkins. At the time of Elkins' death, Ferrata had the child with him in

6

Madisonville. Kilpatrick testified that Elkins tried to get child support from Ferrata, but he would not cooperate; Ferrata served Elkins with papers related to the custody of the child, and Elkins was planning on going to Madisonville on July 25, 2011, on a custody matter about her child. Kilpatrick further stated that Ferrata was a "psycho," and that he had kicked and dented the door of Elkins' vehicle.

EVIDENCE EXCLUDED REGARDING FERRATA

On cross examination of Kilpatrick, defense counsel sought to elicit more details from her about Ferrata. In the presence of the jury, defense counsel asked the following questions:

> Q. Who was the father of this child?
> A. Frankie Ferrata. . . .
>         . . . .
> Q. All right. So that child was with the father in Madisonville; is that correct?
> A. Yeah.
> Q. And there was a dispute between them as to whether the child --
> the case was going to be moved back to Harris County? Is that what it was?
> A. I am not really sure what it was that she had to go sign for. She let Frankie take Ava to spend the night. He was supposed to bring her back. She didn't -- he served her with papers for custody.
> Q. Out of Madisonville?
> A. Yeah.
> Q. Now, you had an interview, did you not, with a couple of detectives, Detective Quintanilla and someone else; is that correct?
> A. Yes, sir.
> Q. Did you describe the father of Amber's child as being a psycho?
> A. Yes, I did.

7

Q. And when you say he was a psycho, what sort of things was he doing to make you think that?

The State then objected on relevancy grounds to the question. The trial court sustained the objection.

Defense counsel requested the opportunity to take the witness on voir dire outside the presence of the jury and to make an offer of proof "to show that there [was] one or more persons who had an interest in disposing of this deceased." The State further objected: "[I]f they are trying to establish an alternative perpetrator, they have to establish evidence, including some nexus to this crime." During the voir dire of Kilpatrick, defense counsel asked her to explain why she described Ferrata as a "psycho." She explained that Ferrata was a military veteran, and, according to her, he had "post-traumatic stress syndrome." Kilpatrick further stated, "[Ferrata] got addicted to pills . . . it just made him crazy." She indicated that at one time Ferrata and Elkins were using pills, and "[w]hen they would fight, they would be crazy." The trial judge sustained the objections.

CLARKE ARGUES FERRATA COULD HAVE KILLED ELKINS

Clarke contends he was not allowed to fully develop his cross examination of Kilpatrick regarding his theory that Ferrata, "in order to avoid losing custody of [his] daughter," had the "motive and temperament" to murder Elkins (or to have others commit the murder). During his closing argument, defense counsel

8

explained to the jury that Ferrata had initiated family custody proceedings and had taken possession of the child. Counsel told the jury that "I am not telling you Frankie Ferrata killed Amber[,]" but "if you put a red fire department hat on with a blinky light, you could not be more of a suspect than Frankie Ferrata."

## THE SIXTH AMENDMENT GUARANTEE

"The Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." *Crane v. Kentucky*, 476 U.S. 683, 690 (1986). The Sixth Amendment "guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (emphasis in original). Therefore, the fact a defendant is not allowed to present his case to the extent or in the manner he may desire does not rise to constitutional error when the defendant was not prevented from presenting the "substance of his defense" to the jury. *Potier v. State*, 68 S.W.3d 657, 666 (Tex. Crim. App. 2002); *see also* Tex. R. App. P. 44.2(a). Erroneous evidentiary rulings rarely constitute a denial of the constitutional right to present a meaningful defense. *Williams v. State*, 191 S.W.3d 242, 257 (Tex. App.—Austin 2006, no pet.).

ALTERNATIVE PERPETRATOR

A defendant in a criminal prosecution may be entitled to present relevant evidence that another party is responsible for the crime alleged against the defendant. *Wiley v. State*, 74 S.W.3d 399, 406 (Tex. Crim. App. 2002); *Caldwell v. State*, 356 S.W.3d 42, 47 (Tex. App.—Texarkana 2011, no pet.). A defendant is not required to show that the alternative suspect murdered the victim. *See Wiley*, 74 S.W.3d at 406-08. But the defendant must show that "his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a nexus between the crime charged and the alleged 'alternative perpetrator.'" *Id*. at 406. Weak, speculative evidence that someone else may have committed the crime is inadmissible and poses a great threat of confusing the issues in a trial. *Id*. at 406-07; *see also* Tex. R. Evid. 403 (danger of confusion of the issues).

In *Wiley*, the defendant was the owner of a restaurant and he was charged with arson after the restaurant was damaged by a fire. At trial, Wiley wanted to introduce evidence about a "known 'fire-starter,' … [who] 'was thrown out of the restaurant a few days prior to the fire and, in fact, was standing across the street watching it burn.'" *Id*. at 406. The State objected to the evidence and the trial court sustained the objection "apparently under Rule 403." *Id*. at 403. On appeal, Wiley

argued that "had the jury been permitted to hear evidence that another person could have committed the offense, they might have entertained a reasonable doubt as to Appellant's guilt." *Id.* at 405. The Court of Criminal Appeals held that the trial court did not err in excluding the evidence, and stated as follows:

> In weighing probative value against Rule 403 counterfactors, courts must be sensitive to the special problems presented by "alternative perpetrator" evidence. Although a defendant obviously has a right to attempt to establish his innocence by showing that someone else committed the crime, he still must show that his proffered evidence regarding the alleged alternative perpetrator is sufficient, on its own or in combination with other evidence in the record, to show a **nexus** between the crime charged and the alleged "alternative perpetrator."

*Id.* at 406 (emphasis added). The *Wiley* court determined that the evidence was speculative, and even if it was relevant, it could not survive the Rule 403 balancing test because it had a great risk of causing confusion of the issues and requiring a side trial about whether the alleged alternative perpetrator committed the crime. *Id.* at 407. "It is not sufficient for a defendant merely to offer up unsupported speculation that another person may have done the crime. Such speculative blaming intensifies the grave risk of jury confusion, and it invites the jury to render its findings based on emotion or prejudice." *Id.* Accordingly, even if evidence may otherwise be relevant, before admitting the evidence of an alternative perpetrator, the trial court must weigh the probative value of otherwise relevant evidence against the "special problems" presented by alternative perpetrator evidence.

11

*Dickson v. State*, 246 S.W.3d 733, 739-40 (Tex. App.—Houston [14th Dist.] 2007, pet. ref'd) (citing to *Wiley*, *supra* at 406).

CLARKE WAS NOT DEPRIVED
OF A MEANINGFUL OPPORTUNITY TO PRESENT HIS DEFENSE

"Exclusions of evidence are unconstitutional only if they 'significantly undermine fundamental elements of the accused's defense.'" *Potier*, 68 S.W.3d at 666 (quoting *United States v. Scheffer*, 523 U.S. 303, 315 (1998)). "'That [the defendant] was unable to present his case to the extent and in the form he desired is not prejudicial where . . . he was not prevented from presenting the substance of his defense to the jury.'" *Potier,* 68 S.W.3d at 666 (quoting *United States v. Willie*, 941 F.2d 1384, 1398-99 (10th Cir. 1991)).

Based upon the record in this case, we conclude that the excluded evidence did not form "such a vital portion of the case" that the exclusion effectively precluded Clarke from presenting the substance of his alternative perpetrator defense to the jury. Even without the excluded evidence, there was evidence in the record before the jury (which we have detailed herein) from which Clarke could argue to the jury that a third party, such as Ferrata, was the killer because he was a "psycho" and because he had a motive to commit the offense. *See James v. State*, 356 S.W.3d 728, 736 (Tex. App.—Fort Worth 2011, pet. ref'd).

The excluded testimony that Clarke wanted to explore was Ferrata's military status, prior drug use, previous fights with Elkins, and an alleged diagnosis of post-traumatic stress disorder. Based upon the record, it appears that Kilpatrick was not qualified to diagnose any mental disorder, and much of her testimony relating to the excluded items would have been based on hearsay. Even if the excluded evidence had been admitted, it would have only "incrementally" buttressed Clarke's defensive theory of an alternative perpetrator.

Accordingly, we conclude that the exclusion of the proffered testimony was not of a constitutional dimension and did not rise to the level of denying Clarke's fundamental constitutional right to have a meaningful opportunity to present his defense. *Walters v. State*, 247 S.W.3d 204, 221-22 (Tex. Crim. App. 2007); *Ray v. State*, 178 S.W.3d 833, 836 (Tex. Crim. App. 2005); *Wiley*, 74 S.W.3d at 408; *Kappel v. State*, 402 S.W.3d 490, 496 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (Appellant was permitted to present his defense and was only barred from exploring specific details; trial court's limitation on cross-examination did not rise to constitutional level of violating appellant's due process right to present his defense.); *see also* Tex. R. App. P. 44.2(a).

THE TRIAL COURT DID NOT ABUSE ITS DISCRETION

Although we have already concluded that Clarke was not denied a meaningful opportunity to present his alternative perpetrator defense, we also conclude that, based upon this record, the trial court did not abuse its discretion in excluding the evidence in question. We review the trial court's evidentiary rulings using an abuse of discretion standard. *Tienda v. State*, 358 S.W.3d 633, 638 (Tex. Crim. App. 2012); *Martinez v. State*, 327 S.W.3d 727, 736 (Tex. Crim. App. 2010). A trial court does not abuse its discretion unless its decision is outside the "zone of reasonable disagreement." *Tienda*, 358 S.W.3d at 638.

In this case, Clarke has not shown that the trial court abused its discretion by excluding the evidence. The additional questions Clarke wanted to ask Kilpatrick were related to Ferrata's military background, Ferrata's prior drug use, past fights with Elkins when they were previously together, and the allegation that he had post-traumatic stress disorder. The fact that Ferrata was or was not a veteran, or that he possibly had PTSD, or that he may have been a drug user would not have been relevant to any substantive issue in the trial. And the past fighting or how he may have acted when he was on drugs in another unrelated incident with Elkins would be only marginally relevant. Moreover, even if such details may have been marginally relevant, the trial court's decision to exclude the evidence is within the

zone of reasonable disagreement, given the "special problems presented by 'alternative perpetrator' evidence," because the excluded evidence would not have established a "nexus" between Ferrata and the murder of Elkins. *Wiley*, 73 S.W.3d at 406. Accordingly, the trial court did not abuse its discretion in excluding the evidence.

We further conclude that, even if the evidence was improperly excluded, there was no harm under Rule 44.2(b) of the Rules of Appellate Procedure. Rule 44.2(b) provides that any non-constitutional error that does not affect a substantial right must be disregarded. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998); *Tillman v. State*, 376 S.W.3d 188, 199 (Tex. App.—Houston [14th Dist.] 2012, no pet.); *see also* Tex. R. Evid. 103(a) ("Error may not be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is affected[.]"). An error does not affect substantial rights if the appellate court "has fair assurance that the error did not influence the jury, or had only a slight effect." *Johnson*, 967 S.W.2d at 417.

The substance of the alternative perpetrator defense was before the jury. In view of all the evidence presented to the jury, it is with "fair assurance" we conclude that the exclusion of the additional details from Kilpatrick about Ferrata did not influence the jury or that it had only a slight effect. As noted above, the

additional testimony would not have added significantly to Clarke's defense; the excluded testimony would only have added incrementally to that defense. Given the evidence that was before the jury, the error, if any, was not of constitutional dimension and, moreover, under Rule 44.2(b), would have had only a slight effect on the jury.

We overrule Clarke's issue on appeal, and we affirm the judgment.

AFFIRMED.

_____
LEANNE JOHNSON
Justice

Submitted on January 2, 2014
Opinion delivered April 16, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Johnson, J.J.

16